UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MONICA M.,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | CASE NO. 2:24-CV-1416-DWC<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her applications for Supplemental Security Income (SSI) benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court finds no reversable error and affirms the Commissioner's decision to deny benefits.

**I.     BACKGROUND**

Plaintiff filed an application for SSI on April 28, 2021, and her amended alleged date of disability onset is the same date. Administrative Record (AR) 18, 42. Her requested hearing was

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 1

held before an Administrative Law Judge (ALJ) on October 4, 2023. AR 35–66. On November 20, 2023, the ALJ issued a written decision finding Plaintiff not disabled. AR 15–34. The Appeals Council declined Plaintiff's timely request for review, making the ALJ's decision the final agency action subject to judicial review. AR 1–7. On September 11, 2024, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 5.[1]

In her final decision, the ALJ found Plaintiff had the severe impairments of obesity, fibromyalgia, occipital neuralgia, and asthma. AR 21. She found Plaintiff had the Residual Functional Capacity (RFC) to "perform light work as defined in 20 CFR 416.967(b) involving: no concentrated exposure to vibration or hazards (defined as work at heights); occasional crawling; no climbing ladders, ropes, or scaffolds; and frequent crouching, stooping, and climbing ramps and stairs." AR 23–24.

## II.   STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III.   DISCUSSION

In her opening brief, Plaintiff argues the ALJ failed to properly consider her psychological impairments and her subjective symptom testimony. Dkt. 12.

---

[1] Plaintiff also filed for Disability Insurance Benefits (DIB), but that claim was dismissed after she amended her alleged onset date to a date after her date last insured. *See* AR 18, 41–42. Although the Complaint requests the Court reverse and set aside the decision denying Plaintiff's application for DIB (Dkt. 5 at 2), Plaintiff does not challenge the ALJ's dismissal of her DIB claim in her opening brief (*see* Dkt. 12). Plaintiff's request for relief with respect to her DIB claim is therefore denied.

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 2

A.      **Subjective Symptom Testimony**

Plaintiff testified that, due to her impairments, she had difficulties standing more than ten minutes at a time, walking more than a block, sitting more than thirty to forty-five minutes at a time, and lifting more than twelve pounds. *See* AR 47. She testified she also has asthmatic symptoms and her occipital neuralgia causes migraines several times a month. AR 48–50, 56.

The ALJ was required to give specific, clear, and convincing reasons for rejecting this testimony unless there was affirmative evidence of malingering. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); AR 24.

Defendant argues there is affirmative evidence of malingering in this case. Dkt. 16 at 3. Defendant points to notes from a medical examination conducted by Brendon Scholtz, Ph.D., for the purposes of assessing disability, where he noted Plaintiff:

> was engaging in impression management as evidenced by the use of very exaggerated and or impressionistic, verbal expression, especially when describing the impact of alleged disability or limitations. The Examinee also made what appeared to be purposefully bizarre statements during the interview in an apparent effort to have this examiner believe that she was actively psychotic. This presentation did not appear genuine. . . . The Examinee's self-report appears to have only marginal veracity and should be viewed with some caution.

AR 630–31. He also noted Plaintiff "appeared to be volitionally presenting ego-syntonic symptoms in an effort to convince this examiner that she was significantly psychotic." AR 632.

It is of no consequence that the ALJ did not make a particular finding of malingering. Rather, evidence suggesting malingering is sufficient to vitiate the clear and convincing standard of review for subjective symptom testimony. *See Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2006) (unpublished) ("[T]he weight of our cases hold that the mere existence of 'affirmative evidence suggesting' malingering vitiates the clear and convincing standard of review.");

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (affirming *Schow*'s statement of law).

A diagnosis of malingering is unnecessary to establish affirmative evidence suggesting malingering; rather, the inquiry focuses on a claimant's purposeful behavior and representations. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (purposeful refrainment from work activities for purpose of receiving disability constituted affirmative evidence of malingering); *see also Cha Yang v. Comm'r Soc. Sec. Admin.*, 488 F. App'x 203, 205–06 (9th Cir. 2012) (unpublished) (describing *Berry* as "upholding ALJ's finding of malingering where petitioner purposefully refrained from engaging in various work activities and misrepresented when he first became disabled" and rejecting finding of malingering where there was simply evidence of a desire to obtain benefits without evidence this was the purpose of claimant's representations).

Here, Dr. Scholtz opined that Plaintiff's "impression management" involved "purposefully bizarre statements," that she was "volitionally presenting" in a particular manner, and that she was doing so with the purpose of "convinc[ing]" him of psychotic symptoms. AR 630–32. These notations describe volitional behavior and exaggerated representations made for the purpose of persuading the consulting examiner of certain symptoms. Dr. Scholtz's statements therefore constitute affirmative evidence suggesting malingering.

Because the record contains affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony did not need to meet the clear and convincing standard. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Instead, the Court must affirm the ALJ's reasoning if supported by substantial evidence. *See Bayliss*, 427 F.3d at 1214 n.1. The ALJ's rejection of Plaintiff's testimony met this standard.

     The ALJ rejected Plaintiff's testimony based on her improvement from medication Lyrica for her fibromyalgia and occipital blockers and trigger point injections for her occipital neuralgia. *See* AR 25. This is a valid reason to reject Plaintiff's testimony. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively . . . are not disabling[.]").

     The ALJ's findings of medical improvement were supported by substantial evidence. Several treatment notes described Plaintiff's fibromyalgia as "well controlled" and indicated she was "doing well." *See* AR 806, 863, 1058. One treatment note indicated blockers and injections gave her 90 percent relief from her occipital neuralgia symptoms for about three months. *See* AR 1059. Notes from about three months after she initially received those treatments suggested she had little pain and no headaches up until two weeks prior to the visit. *See* AR 856 (trigger point injections and blockers "seemed to work well until 2 weeks ago and now having symptoms of pain again"); AR 862 ("Did well with bilateral occipital and TPI injection with yelena about 3 months ago and wants to repeat them as headaches came back 2 weeks ago[.]").

     Plaintiff argues the ALJ failed to consider the context of her improvement and that she continued to experience debilitating symptoms during the relevant period. Dkt. 12 at 14–15. But, in support, Plaintiff cites only to her own testimony that she experienced such symptoms. *See id.* This does not show that she did not improve in a manner inconsistent with her testimony. Although some of the relevant medical evidence indicates Plaintiff experienced pain, those notes attribute the pain to her occipital neuralgia and indicate this is because she needed further injections and blockers. *See, e.g.*, AR 806, 856. Plaintiff has not shown error in the ALJ's finding of improvement with medication.

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 5

1    With respect to Plaintiff's asthma, the ALJ found her testimony inconsistent with normal
2  cardiopulmonary examinations, along with the lack of objective evidence corroborating any
3  respiratory limitations. *See* AR 25, citing AR 1478, 1558, 1564, 1429, 1432. This, too, was a
4  reasonable determination that is not challenged in Plaintiff's opening brief. *See* Dkt. 12.
5    In sum, the ALJ gave proper reasons supported by substantial evidence for rejecting
6  Plaintiff's testimony. The Court need not consider the remaining reasons given for rejecting this
7  testimony, as any error with respect to those reasons would be harmless. *See Molina v. Astrue*,
8  674 F.3d 1104, 1115 (9th Cir. 2012) (an ALJ's error in discounting subjective testimony "is
9  harmless so long as there remains substantial evidence supporting the ALJ's decision and the
10  error does not negate the validity of the ALJ's ultimate conclusion") (cleaned up).
11  **B.    Plaintiff's Psychological Impairments**
12    Plaintiff challenges the ALJ's step two finding that her psychological impairments were
13  non-severe and the ALJ's omission of psychologically based limitations from the RFC. *See* Dkt.
14  12 at 3–11. Plaintiff does not challenge the ALJ's assessment of any particular evidence but,
15  rather, argues that, weighing the evidence which supports the ALJ's decision against that which
16  does not, the ALJ's determinations with respect to her psychological limitations were not
17  supported by substantial evidence. *See id.*
18    With respect to the ALJ's step two finding, any error in finding Plaintiff's psychological
19  impairments non-severe is harmless. Typically, any error in finding an impairment non-severe at
20  step two is harmless if step two is decided in Plaintiff's favor because the ALJ must consider
21  limitations and restrictions from non-severe impairments in formulating the RFC. *See Buck v.*
22  *Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017); *see also Burch v. Barnhart*, 400 F.3d 676,
23  682–83 (9th Cir. 2005). To show prejudicial error, Plaintiff must show the ALJ did not consider
24

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 6

the limitations posed by the non-severe impairment in formulating the RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

Here, although the ALJ began her discussion of the RFC by considering "the claimant's 'severe' impairments" (AR 24), she nevertheless noted she would consider Plaintiff's non-severe impairments in formulating the RFC (*see* AR 22) and proceeded to discuss potential psychological limitations while evaluating the medical opinion evidence (*see* AR 26–27). The ALJ is required to "consider" impairments which are non-severe in formulating the RFC, 20 C.F.R. § 404.1545(a)(1), but this does not mean the ALJ must include limitations in the RFC related to those impairments. Plaintiff has not demonstrated harmful error in the ALJ's step two determination.

Turning to the RFC assessment, the ALJ's exclusion of any psychological limitations from the RFC was supported by substantial evidence. Generally, medical opinions upon which an ALJ relies in formulating the RFC—particularly when consistent with at least some of the evidence in the record—serve as substantial evidence for an ALJ's ultimate RFC determination. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (where the ALJ's decision relies upon contradicted medical opinion of examining physician in reaching disability determination, "the findings of the ALJ are supported by substantial evidence"); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of the nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

Here, the ALJ found persuasive the opinions of two state agency psychiatric consultants who found Plaintiff's mental impairments resulted in mild or no limitations. *See* AR 26; AR 99–

101 (opinion of Carol Mohney, Ph.D.); AR 126–31 (opinion of Bruce Eather, Ph.D.). The ALJ found persuasive the opinion of examining consultant Dr. Scholtz, who opined Plaintiff was able to obtain and maintain full-time employment and otherwise lacked any psychological limitation. *See* AR 27; AR 628–34. The only contrary medical opinion—that of Jenna Yun, Ph.D. (AR 392–97)—was rendered prior to the alleged onset date and therefore is of little probative value. *See Carmickle*, 533 F.3d at 1165 (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

The ALJ reasonably assessed the objective medical evidence in considering these opinions, and that evidence supports the ALJ's conclusion. The ALJ pointed to evidence Plaintiff had normal mental status examinations demonstrating normal cognition and ability to interact with others, including treatment notes showing Plaintiff to have normal behavior, attention, concentration, memory, insight, and judgment. AR 26 (citing AR 946, 959, 975, 985, 1461, 1467, 1476, 1483, 1501, 1509, 1233, 1241, 1250, 1263).

The ALJ also pointed to some evidence of medical improvement. *See* AR 27. For instance, in September 2023, one treatment note indicated the medications prescribed for her mental health issues made her "90 [percent] better." AR 1234. Although a 90 percent improvement is not 100 percent relief, such a substantial improvement, considered alongside the often-normal mental status examinations cited by the ALJ, is substantial evidence supporting the ALJ's determination.

True, some of the appointments in which normal mental status examinations were noted involved complaints unrelated to Plaintiff's mental conditions. *See* AR 975, 1483, 1237, 1243, 1253, 1268. Although the nature of these appointments may make them less probative, it does not deprive them of being substantial evidence. *Cf. Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 8

Cir. 1987) (finding primary care physician competent to provide opinion on a claimant's mental health because "it is well established" physicians in family or general practice "identify and treat the majority of Americans' psychiatric disorders" and because he provided "clinical observations of [the claimant's] depression").[2]

Many treatment notes, including those cited by the ALJ, describe Plaintiff as being depressed or anxious at appointments. *See, e.g.*, AR 525, 545, 812, 925, 1485. However, for two reasons, these notes do not render the ALJ's conclusions unsupported by substantial evidence.

First, the ALJ did note that some of the objective medical evidence documented mood irregularities but pointed out those notes nevertheless displayed normal results related to cognition and interaction. *See* AR 26. The ALJ could reasonably conclude that those normal results indicated Plaintiff would not have work-related limitations stemming from those mood irregularities. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Second, these notations were made either before Plaintiff's psychological medication regimen was finalized or when Plaintiff had not taken medications for some time. *See* AR 525 (medications added due to symptoms); 548 (adjusting medications); 925 (medications increased due to symptoms); 1234 (Plaintiff out of medications from April to September 2023). At best, then, this evidence does not cast doubt upon the ALJ's conclusion that medications ultimately

---

[2] Plaintiff relies upon *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017), in arguing to the contrary, but in that case a medical opinion rendered by an orthopedist did not mention specific mental health problems. Because that provider would not be expected to mention those problems, the Court found that omission did not detract from the claimant's mental health complaints. *Id.* Here, however, the notes involving non-psychological complaints did include observations related to Plaintiff's mental symptoms. *See* AR 975, 1483, 1237, 1243, 1253, 1268. The ALJ relied not upon the omission of mental health complaints but, rather, upon recorded observations about mental health symptoms made by professionals competent to render them. *See Sprague*, 812 F.2d at 1232. That such observations might be unexpected in the context they were made does not render them insignificant.

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 9

helped to manage Plaintiff's symptoms, and the noted mood irregularities are explained by her then-deficient medication regimen rather than her impairments. *See Warre*, 439 F.3d at 1006; *see also id.* at 1006–07 (citing *Burnside v. Bowen*, 845 F.2d 587, 592 (5th Cir. 1988) (affirming denial of SSI application and declining to hold that persons are entitled to benefits if they "can prove no disability but only seek benefits as a means of affording care that might conceivably prevent a disability")).

Plaintiff makes two additional arguments about the nature of the treatment notes relied upon by the ALJ. Plaintiff contends that some of the treatment notes reflecting normal mental status examinations are not probative as to Plaintiff's abilities to interact because they involved telehealth appointments where Plaintiff was at home. Dkt. 12 at 10. Plaintiff also argues that much of the evidence of improvement is not probative because it occurred when she spent most of her life at home, so it would not reflect the potential symptoms she might have in a less sheltered environment. *Id.*

Both arguments assume Plaintiff had difficulties being in environments outside her home. But the only evidence supporting this assumption is Plaintiff's own testimony and statements. *See* Dkt. 12 at 5–7. The ALJ considered and reasonably discounted this portion of Plaintiff's testimony:

> [s]he claims that she does not leave the house, but I note she was regularly going to physical therapy with no concerns there about her presentation, and, she also went on a trip to Missouri to see her daughter and during this trip, she went on tinder and met several individuals[.]

AR 22 (citing AR 1489). As discussed, the ALJ was not required to provide clear and convincing reasons for rejecting Plaintiff's testimony. The evidence described is, at the least, substantial evidence to reject Plaintiff's testimony and reflects a reasonable interpretation of the record. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("activities may be grounds for discrediting

the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citation and quotation omitted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ reasonably found travel inconsistent with debilitating allegations).

In sum, the medical opinions of the relevant period found Plaintiff had no psychological limitations, and the ALJ properly found these opinions persuasive. The ALJ reasonably found objective medical evidence showed normal cognition and behavior, as well as substantial control of Plaintiff's conditions from Plaintiff's medication regimen. Under the "highly deferential" substantial evidence standard, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009), this constitutes substantial evidence supporting the ALJ's determination that no further psychological limitations were necessary in the RFC. *See Allen*, 749 F.2d at 579; *Andrews*, 53 F.3d at 1041.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **AFFIRMS** Defendant's decision denying benefits.

Dated this 24th day of March, 2025.

David W. Christel
United States Magistrate Judge